Boring, J.,
dissenting:
'Phis case was heard and decided in this court in 1856, and before any of the present members of the court belonged to it. It is now referred back to us by the following joint resolution:
“ Resolved, S¡v., That the papers in the case of Francis A. Gibbons and Francis K. Kelly be referred to the Court of Claims; and the court shall be authorized, if they are of opinion that the ends of justice will he served thereby, to grant a rehearing of the same on an amended petition, without prejudice to the claim by reason of the former decision of said court.”
By this resolution the case is returned to this court for a rehearing, and that rehearing is to be of the whole case, for no part of it is specified or excepted; and I understand that the provision that the rehearing shall be without prejudice to the claim by reason of the former decision of this court sets aside that decision, so as to prevent its action as a bar to the claim now made, that justice may be done to the petitioners under their contract, if it has not been. But I do not understand that we are bound by that decision or anything heretofore found, so that, if by any misapprehension of facts or law, the petitioners have been overpaid, before they are to be overpaid again, the United States are to be credited with what they have paid as so much paid on *361 account of the contract. If it is less than was due, they are to make up the deficiency; if it was all that or more than was due, they are not to pay still further.
The first thing to be determined is the construction of the contract, and as to this the petitioners aver as follows in their present petition:
“ The petitioners further show that, by the true construction of their contract, they were only bound to erect said light-houses with the materials purchased and transported by the government.”
Now, the materials for the light-houses consisted of the lanterns and illuminating apparatus and articles necessary thereto, and also of the stone, mortar, joists and timbers, and wood-work and iron-work, &e., for the eight structures, and each of these were by the contract to be a hundred feet high, at least; and as to whether such masses of material were to be furnished and transported by the government or by the petitioners, they must necessarily and positively know, and if they were to be furnished and transported by them, then their averment in their petition that, by the construction of the contract, they were to be furnished and transported by the United States, is, at the least, a dis-ingenous pretence.
Now, the claim that they were only to erect the structures from materials to be furnished and transported by the government, was never made before in the application to the department or to Congress, or in the previous litigation in this court; on the other hand, the petitioners and their counsel have before always emphatically declared the contrary.
In their memorial to the Senate committee, (Sen. Doc. 7, pp. 140, 141, 1854, 1855,) the petitioners construe their contract and argue their case, and they say thus : “ Two distinct and separate duties were to be performed by the contractors. They were bound, in the first place, to furnish the materials and build the wood and stone-work of the light-houses, in whatever way and from whatever sources they chose. Upon this part of the contract they were to make whatever profit might accrue to them from their agreement.
“ In the second place, they were bound to provide (and here they quote from the contract) every article and thing connected with the lighting apparatus, and to purchase the same from the persons who had contracted with the United States to furnish such .apparatus for all the light-houses, and to pay therefor the price stipulated in their said contract with the United States.” And to this quotation from the contract the petitioners add, “ Upon this part of their agreement they could make no profit — they could gain no advantage. It was on *362 their part an undertaking to fulfil the contract of the United States, and to advance tbe moneys required for the payment of the prices so stipulated.”
Then, their counsel, in the printed argument in this court at the former trial of this case, says: “ It is true that, by the contract, the government is only hound to transport the materials shipped from the Atlantic States, and to deliver them at the sites, and the petitioners were to transport other materials, say brick and stone, or to furnish them on the sites, if they could he procured there,” (Reports pp. 50, 51, 1865-’56.)
In the former trial of this case, it was held by a majority of the court that the goods lost in the Oriole were the property of the United States. I do not concur in that opinion. I think the contract and the evidence show that the $35,000 was an advance of part of the contract price, made, as is usual by the United States, to the contractors on the partial performance of the contract by them in purchasing the illuminating apparatus of the persons of whom the United States had agreed to purchase it and on the security of the property assigned to the United States.
The contract speaks of the $35,000 as an advance, and what I think is conclusive that it was so is, that by the express provision of the contract it was to be deducted from the contract price; and this shows, also, that the property lost on board the Oriole was the property of the petitioners, held as security by the United States, and the petitioners purchased it, and shipped it, and insured it, and transferred it, and the policy of assurance and the transfer by the bills of lading and invoice, and policy of insurance, is the usual way of taking as security property shipped. Then the witnesses speak of it as security for the $35,000 advanced. Mr. William Hodge, the Assistant Treasurer of the United States at the time, who made the arrangement, after stating the advance of the $35,000, says, “ As security to the United States, all these materials, including the entire cargo on board the vessel in which they were shipped, were transferred to the United States by invoice and bill of lading,” (R. p. 42,) and Mr. Hemmick, the agent of the petititioners, in his affidavit, adduced by the petitioners, says : “ The said policies were, to the positive knowledge of the deponent, assigned over to the United States as security for advances made to Messrs. Gibbons & Kelly,” and it is not credible that men of even ordinary business capacity and experience should represent property held by its owner as security for advances to others’; and besides all this testimony, that of the petitioners themselves is most express- In *363 their memorial to Congress, quoted from before, they say : “ All the property of your memorialists on. board the said bark Oriole had been some time before transferred to the government, as security for certain, advances made by the government.” This is their statement of the facts. Then they state their conclusion as to its legal effect, as follows : “ It was, therefore, in fact the property of the government, and was at the risk of the government when it was lost.” But this conclusion is not only a non sequitur from the premises, but it is disproved by them. For if, as they state, the property was theirs, held by the government as security, the risk of the property was theirs and the risk of the security was the government’s, and when the property was lost, they lost their property and the government lost their security; and I think that, by the contract, the testimony and the unequivocal declarations of the petitioners, the property in the Oriole was their property, held by the government as security only, and that, therefore, the government were not bound or legally liable to pay for it. They have, however, under the previous decision of this court, paid for it once, at its full value, and I think they are not bound to pay for it again, and that at four times its original cost; and the claim for the property lost in the Oriole is the only claim for materials now made.
Then, as to the transportation, I think, on the evidence, that the petitioners have been paid the cost of that many times over.
It has been seen that the counsel for the petitioner in the former trial said that the government was only bound to transport the materials shipped from the Atlantic States, and to deliver them at the sites of the light-houses. That transportation has been paid to the petitioners at $5,413, and no claim is made for that now.
The transportation from San Francisco to the light-houses was to be of the lantern lenses, See., (R. p. 7,) by one trip to each of the eight light-houses, (R. p. 6,) the most distant of which was only seven hundred miles from San Francisco, and for this transportation the petitioners have been paid $66,000, (R. C. of Cls., Gibbons & Kelley v. U. S., p. 58, and references and Sen. Doe. 53,) and they had claim for it $31,000 more.
I think that on the whole case the petitioners have been paid more than they were entitled to, and that the defendants are entiled to judg ment.